187 So.2d 145 (1966)
Sallie Mae Ewell MOORE, Plaintiff-Appellant,
v.
John Wesley MOORE, Defendant-Appellee.
John Wesley MOORE, Plaintiff-Appellee,
v.
Sallie Mae Ewell MOORE, Defendant-Appellant.
Nos. 10544, 10545.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1966.
Rehearings Denied May 5, 1966.
Writ Refused May 19, 1966.
Zelden & Zelden, New Orleans, for appellant.
Alwine Mulhearn, Tallulah, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
This appeal is from judgment rendered in a consolidated proceeding representing two actions initiated by each of the original *146 plaintiffs for termination of their marriage and asking for a decision as to the paraphernality or community status of certain real and personal property.
Judgment of divorce was granted the wife and from that portion of the judgment there is no appeal. In addition the lower court determined the property to be owned in the following proportions:
An undivided one-fifth interest in the real property to Sallie Mae Ewell Moore as her separate and paraphernal property.
The remaining four-fifths interest in the real property as community property and owned in indivision between Sallie Moore and John Wesley Moore.
It was further ordered that there be judgment in favor of the community and against the wife for $838.00; that monies which had been paid into the Teachers' Retirement Fund by Sallie Moore during the marriage belonged to the community; that all costs be paid by the community.
From the portion of the judgment concerning the status of the property the wife appealed and the husband answered, requesting affirmation of the lower court's judgment. Appellant cites as additional error the lower court's failure to award attorney's fees.
The series of events which preceded these cases will be stated only in detail sufficient to an understanding of the issues.
The parties hereto were married in Tensas Parish on November 2, 1930, and immediately after the marriage established the matrimonial domicile on property located in that parish belonging to the wife's parents. At the time the parties established the domicile appellant's mother was deceased and appellant had inherited one-tenth of the property subject to the usufruct of the father. The couple continued to reside with appellant's father on the family farm until his death in 1938 and thereafter until 1961 when the parties effected a voluntary separation.
The appellant and her four brothers survived their parents and in 1947 each of the four brothers conveyed his one-fifth interest in the property to appellant by a series of quitclaim deeds. The consideration recited in each deed was stated to be a nominal cash payment plus the assumption of the unpaid balance on an outstanding mortgage covering the property.
In each of the mentioned deeds John Wesley Moore appeared and acknowledged that the property was being purchased by Sallie Moore with her separate and paraphernal funds and for her separate and paraphernal estate. This acknowledgment was in each instance signed and witnessed before a notary.
In December 1953, John A. Hogue, who had become the record owner of the property by purchase at a tax sale, conveyed the entire tract to Sallie Moore by notarial act wherein it was stated she was purchasing the property with her separate and paraphernal funds. The recited consideration was the payment of $1,000.00 cash. J. W. Moore appeared as a party to this instrument and acknowledged in the deed the paraphernality of the funds and the property and that the property was not community property.
The succession of appellant's father was opened in Tensas Parish in 1954. Reference was made to the aforesaid deeds and Sallie Ewell Moore was placed in possession of the entire property in her own name.
On April 20, 1963, John Wesley Moore appeared before a notary and stated that the described property was purchased by credit deeds, the credit portion of which was paid with community funds; that the appearer disavowed and repudiated the declaration in the instruments relative to the paraphernality of the funds with which his wife acquired the described property. This *147 instrument was filed for record on April 23, 1963 in Tensas Parish. Although no reason for this disavowal is reflected in the instrument, appellee alleged in his supplemental petition his answer and in brief to this court that because of his limited education and the superior education of his wife he had been the victim of a fraudulent scheme on the part of his wife and by such scheme she had procured his signature to the acknowledgments.
Before considering the issue of error or fraud we feel it proper to dispose of the question of whether or not, in the absence of fraud or error, the husband is bound by his signature to the acknowledgments which are a part of the quitclaim deeds, although signed in some instances over a month after the signing of the deed. In the case of Rousseau v. Rousseau, 209 La. 428, 24 So.2d 676 (1946) the Louisiana Supreme Court reenunciated the settled principle that "a husband who has been a party to an act of purchase in which it is declared that the price belonged to the wife in her paraphernal right, and that the property is to be such, cannot afterwards contradict it." Kerwin et al. v. Hibernia Insurance Company, 35 La.Ann. 33; Maguire v. Maguire, 40 La.Ann. 579, 4 So. 492; Pfister v. Casso et al, 161 La. 940, 109 So. 770. This rule was reiterated in the more recent case of Monk v. Monk, 243 La. 429, 144 So.2d 384 (1962).
The general rule of estoppel by deed was recognized by counsel in the Rousseau case but it was maintained there, as here, that where the husband alleges error or fraud he is not estopped to deny the declaration of paraphernality signed by him. The error alleged in the Rousseau case was that the husband was "unaware of and knew nothing of such legal clauses, and if same were in there they were in there without his knowledge or consent, and that if he signed such an act with such legal clauses, he signed it under a mistake of fact and a mistake of law." No claim was made that his signature to the acts was fraudulently obtained. The court held:
* * *
"All three acts, passed before three different notaries public, unquestionably contained the clauses in question when defendant signed. It is incumbent on a person before signing an instrument to read it if he can read, and if not to have it read to him and to listen attentively thereto. Succession of Bellande, 42 La. Ann. 241, 7 So. 535; Snell et al. v. Union Sawmill Company et al., 159 La. 604, 105 So. 728."
On the issue of fraud in the instant case the lower court held:
"The husband is a negro of limited mental capacity but physically able to farm and produce crops. The wife took advantage of her superior education and fraudulently induced the husband to sign the acceptance * * *"
While it is true the appellant had taught school for a number of years and it was disclosed on trial that appellee had only a fourth grade education he testified he could read and write. Although he denied remembering signing the acknowledgments, he did not disavow his signature. Only one other witness testified on the issue of fraud and that was the sister of appellee. She stated, over objection of counsel for appellant, that her brother could read and write but that he trusted and relied on his wife in all matters pertaining to the acquisition of the property in question.
From our examination of the record we are unable to agree with the lower court that appellee's declarations of paraphernality were obtained through error or fraud. See Jones v. Mason, 234 La. 116, 99 So.2d 46, 48 (1958) and cases cited therein. As a consequence, we find that the entire immovable property belongs to the separate estate of appellant.
We consider next the status of the annuity, pension or retirement provided for *148 appellant under the State Teachers' Retirement System which was not inventoried as a community asset. Under the decision of this court in Scott v. Scott (La.App. 2 Cir., 1965) 179 So.2d 656, we feel compelled to reverse the decision of the lower court and to hold that such pension, annuity or retirement benefit conferred upon appellant is her separate and paraphernal property and that its exclusion from the inventory as a community asset was proper. There were no allegations or proof of the amount which had been paid into the retirement fund during the existence of the community of acquets and gains. It is therefore impossible on this record to calculate what, if anything, is due the community for the "enhancement" of this fund.
The lower court found the real property had been enhanced by community effort to the extent of $3,000.00, representing the value of the house built upon the property. In addition the record reflects approximately fifty acres of woodland were cleared in 1954 and 1955 which increased the value an estimated $100.00 per acre or $5,000.00, making a total enhancement of $8,000.00.
Under the ruling in Tanner v. Tanner, 229 La. 399, 86 So.2d 80 (1955) attorney's fees incurred by a wife in a divorce proceeding are chargeable to the community even when she is unsuccessful in the suit. This court has the authority to and does find that a reasonable attorney's fee in the instant case is $350.00 and such fee is assessed against the community.
For the reasons assigned the judgment of the lower court is annulled and set aside and it is ordered, adjudged and decreed that the following described property be classified as the separate and paraphernal property of Sallie Ewell Moore:
The EWELL TRACT, composed of the Northwest Quarter (NW ¼) and the North Half of the Southwest Quarter (N ½ of SW ¼) of Section 59, all in T. 13 N., R. 13 E., Tensas Parish, Louisiana, and containing 238 acres, more or less.
Together with all buildings and improvements thereon and all rights, ways, privileges and appurtenances thereunto belonging or in any manner appertaining.
It is further ordered, adjudged and decreed that Sallie Ewell Moore is indebted to John Wesley Moore in the sum of $4,000.00, representing one-half of the increased value of her separate real estate due to community efforts expended during the existence of the community.
It is further ordered that attorney's fees in the amount of $350.00 are awarded in favor of appellant, Sallie Ewell Moore, and against appellee, John Wesley Moore, in his capacity as head and master of the community formerly existing between the parties.
It is further ordered, adjudged and decreed that the benefits due under the Teachers' Retirement Fund are the separate and paraphernal property of Sallie Ewell Moore.
It is further ordered that the case be remanded to the Honorable Sixth Judicial District Court in and for the Parish of Tensas for the limited purpose of determining the value of the Teachers' Retirement Fund benefits due Sallie Ewell Moore at the time of the dissolution of the community of acquets and gains, and for the further determination of what amount, if any, she is obligated to reimburse the community for the enhancement of this fund. After this determination the lower court shall render such judgment as the law and evidence warrants, not inconsistent with the views expressed herein.
All costs of these proceedings are to be divided equally between appellant and appellee.
Annulled, recast and remanded.