293 So.2d 598 (1974)
James R. LYNCH, Jr.
v.
Erin LAWRENCE, wife of James R. LYNCH, Jr.
No. 6170.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1974.
Rehearings Denied May 10, 1974.
Writs Refused June 21, 1974.
*599 Garland R. Rolling, Metairie, for plaintiff-appellant.
Garon, Brener & McNeely, Trudy H. Oppenheim, New Orleans, for defendant-appellee.
Before GULOTTA, STOULIG and SCHOTT, JJ.
STOULIG, Judge.
The only issue presented by this appeal is the extent of Mrs. Erin Lynch's community interest, if any, in her divorced husband's pension plan with South Central Bell Telephone Company. What rights James R. Lynch, Jr., acquired under the pension stem from more than 26 years of employment, during which he was married to defendant most of this time. After the litigants were judicially separated they amicably partitioned that property they both agreed was community, or compromised all disputed items except the pension plan interest. Mr. Lynch claims this as separate property because he contends it is a gift or gratuity from his employer. He has appealed a judgment determining it is a community asset and instructing the litigants as to ultimate method of partition.
Appellant was employed by the telephone company from July 29, 1940 to July 19, 1942, the day he joined the Coast Guard, and rehired November 12, 1945 on his return to civilian life. He has worked there ever since. The community was established in October 1942 and was dissolved effective February 9, 1971. Plaintiff could not retire under the pension plan on the day of dissolution because he was not 65 years old.
The pension plan in effect on this date was last revised June 1, 1969. In the preamble it is stated:
"The South Central Bell Telephone Company undertakes * * * to provide for the payment of definite amounts to its employees * * * when they are retired from service * * *."
To service the plan, the employer set up a trust, funded from an Operations Account and other unspecified sources, when necessary. All full-time employees are participants; they do not contribute to the retirement fund and have no voice in change or modification in the plan.
While a telephone company representative testified membership in the Plan was a fringe benefit, it is apparent none of the proceeds and/or earnings of the trust are apportioned to individual accounts for each employee. After completion of 15 years of service and attainment of 40 years of age, a right to a deferred pension vests in each employee. Thus if he leaves the company once it vests, he is eligible for a pension under the deferred plan after he reaches 65.
On February 9, 1971, plaintiff had a vested interest in the deferred plan. He was not eligible for retirement under any other plan. (Counsel for Mrs. Lynch elicited testimony that early retirement pensions were available under certain circumstances e. g. disabilitybut because the facts establish Mr. Lynch met none of the qualifications we do not feel this is relevant.) The vested interest in the deferred plan could not be converted to cash, nor could it be discounted and assigned; nonetheless it is property, classified as an incorporeal movable by LSA-C.C. art. 460. See Messersmith v. Messersmith, 229 La. 495, 86 So. 2d 169 (1956).
Whether this should be considered community or separate property depends largely on the nature of the pension right conferred. Did the employer intend it as a gratuity to his employee or was it a form of compensation in addition to his salary a promise of future payment for faithful and continuous service? We hold it was a "fringe benefit" (compensation), as the company representative described it, although the plan itself does not so state.
In Laffitte v. Laffitte, 232 So.2d 92 (La. App.2d Cir. 1970), this court treated a pension *600 plan having marked similarities to this one as an earning. The husband-employee, eligible to retire at full pension on the date the community was dissolved, was found to have a "vested interest" in the plan, since it was available to him at any time he elected to retire.
Following the reasoning in Laffitte, we hold defendant has a community interest in the property right that vested in her husband as a result of his employment during the existence of the community of acquets and gains. Specifically she has a right to an undivided one-half interest in the deferred pension plan that had vested before the community was dissolved.
The judgment of the trial court awards defendant "* * * a 28/56 interest in said pension fund as of April 16, 1971, said proportionate interest to be reduced by adding one year to the denominator of said fractional interest for every year that passes from April 16, 1971 until said time as payments on the said pension commence." This formula is based on awarding a half interest in the entire pension plan for the community's 28 years of existence. We cannot affirm appellee's ownership to as great a proportionate interest as that awarded by the trial court because Mr. Lynch had no vested interest in full pension benefits when the community of acquets and gains was dissolved. Rather we limit her community interest to one-half the value of the deferred plan on the date of dissolution.
The plan itself suggests a method of ascertaining the money value of Mrs. Lynch's interest. If it is assumed that appellant, on the date of the dissolution of the community, met the age requirement (65 years) entitling him to retirement under the deferred plan, the pension committee could determine his monthly benefit. Under a provision of the Plan (Section 8, paragraph 16), lump sum settlements of pension rights may be made in certain designated situations, none of which is applicable to this matter. However, the method utilized in the computation of these settlements could be used in determining the present day value of the vested community interest. Mrs. Lynch would be entitled to one-half of this amount.
Because Mr. Lynch is not entitled to receive pension benefits until he reaches a minimum age of 65 (provided he continues in the employment with the company) we hold he is not required to pay this indebtedness until he begins to draw his monthly payments.[1] Furthermore, the amount of the monthly pension payments may be substantially reduced or extinguished by his death. Confronted with this factor of the uncertainty of life, it is necessary that we devise a formula to provide for the satisfaction of Mrs. Lynch's community interest and restrict its payment to funds received from the pension plan. We think the formula for lump sum payment previously discussed in connection with determining Mrs. Lynch's community interest should be applied to compute the discounted value of Mr. Lynch's full pension rights at the date of retirement.
The previously determined value of Mrs. Lynch's community interest would be liquidated out of each pension payment in the proportion that her community interest bears to the total discounted value of Mr. Lynch's pension at the time he begins to collect same. Her payments would continue until her community interest is fully satisfied or the pension payments terminate. More specifically, the formula to determine rate of payment is:
Wife's claim (one-half
of discounted
value of deferred
plan as of February
9, 1971) = Wife's percentage
 of participation.
Future discounted
value of pension as
of the date husband
retires
*601 For the reasons assigned, the judgment appealed from is amended to recognize Mrs. Lynch's community interest in the pension plan at one-half the discounted value of the deferred pension plan and to substitute a method of liquidating the indebtedness as hereinabove set forth. In all other respects the judgment is affirmed. Each litigant is to pay his own costs.
Amended and affirmed.
NOTES
[1] Laffitte v. Laffitte, 253 So.2d 120 (La.App.2d Cir. 1971).