GOTHARD, Judge.
This appeal is from a judgment dismissing the plaintiff’s claim for her community property interest in her ex-husband’s retirement plan.
Martha C. Frazier and Malcolm L. Harper were judicially separated on September 30, 1970 in Jefferson Parish and were divorced in Mississippi on March 17, 1971. On March 16, 1971, in Orleans Parish, the parties entered into an authentic act partitioning their community assets and liabilities. The document was recorded in the 24th Judicial District of Jefferson Parish.
The controversy before this court arose on June 9, 1989, when Ms. Frazier petitioned for a supplemental partition in St. Tammany Parish. She alleged that Mr. Harper had approximately nine years of service with Delta Airlines in Louisiana during the existence of the community and that the retirement or pension funds were omitted from the voluntary partition agreement. She sought settlement of her claim and also asked that Harper list any community assets or liabilities that might have been omitted from the original petition. The defendant’s exceptions of insufficiency of service of process, of lack of jurisdiction over the person, of prescription, and of res judicata were denied on October 17, 1989 and the case was transferred to Jefferson Parish on November 13, 1989. The matter was heard before a hearing officer, and a district judge signed a judgment on October 17, 1990, dismissing Mrs. Frazier’s claim and assessing the costs against her. This appeal followed.
The only issue is whether the court correctly dismissed the plaintiff’s claim against the defendant’s retirement benefits.
Retirement benefits of an employee are a community asset. LSA-C.C. art. 2338. A spouse has an incorporeal right to share in the benefits. Eskine v. Eskine, 518 So.2d 505 (La.1988); Sims v. Sims, 358 So.2d 919 (La.1978). The Sims v. Sims court stated, at 923:
... When the community is dissolved, the non-employed spouse is entitled to have recognized his or her one-half interest in this community asset, i.e., the right to receive payments from employee benefit plans, to the extent (proportion) that these payments result from the employment or contributions during the community. T.L. James & Co. v. Montgomery, *870 332 So.2d 834 (La.1976) and decisions therein cited.
Where a partition agreement omits mention of retirement contribution or benefits, the asset continues to be an asset owned in indivisión by the former spouses and may be divided in a supplemental partition at a later date. LSA-C.C. art. 1401; Succession of Tucker, 445 So.2d 510 (La.App.3rd Cir.1984), writ denied 447 So.2d 1077 (La.1984).
Mr. Harper has been employed by Delta Airlines continuously since 1962. It was stipulated by the parties at the hearing that seven years, nine months, and eight days of that employment took place during the existence of the community of himself and Ms. Frazier; it was agreed also that the community was terminated on September 30, 1970.
Mark Heller testified as an expert in the field of qualified and non-qualified retirement plans, stating that he administered approximately 150 plans. At the defendant's request he investigated the retirement plans for Delta Airlines, conferring by telephone with Carol Dozier, administrator of pension plans in Delta’s Atlanta, Georgia office. Heller testified that Delta had a pre-ERISA plan until February 1, 1972, when that plan was terminated and a new defined benefit pension plan was implemented. When the old plan was dissolved, employee contributions were refunded; however, no refund was made to Mr. Harper, presumably because he had not contributed to the plan. A letter from Ms. Daigle to Mr. Harper stated that no pension benefits were payable to him from the old plan.
Heller explained that the new plan provides a defined benefit of 60% of the employee’s “final average compensation,” i.e. 60% of the average of the highest three consecutive years of pay in the last ten years before retirement. The normal retirement date is age 60 and 25 years of service is required for full benefit. There are penalties for early retirement. If retirement occurs before age 60, there is a 3% per year reduction for each year; a 3% per year reduction also is made for each year of service less than 25. Mr. Harper will receive full benefits if he retires in 1996 at age 60, when he will have earned more than 25 years of service.
Ms. Frazier’s argument in favor of her claim in the new plan raises the question of whether a non-employed ex-spouse has a community interest in an employee’s pension plan, when the plan itself was initiated after the community was terminated but some of the employee’s years of service during the community counted toward his entitlement to retirement benefits. She points out that some of Harper’s years of service during the community are necessary to provide the required 25 years of full benefits; less than 25 years will have taken place between 1972, when the plan began, and 1996, when Harper reaches the mandatory retirement age of 60 years. She argues that although the community did not contribute to the plan in money, his work which resulted in the retirement plan was produced by the community. In the judgment the court stated that, “... the Court specifically finds that there was no pension fund in existence on September 30, 1970 that had any value or could be attributable to the community that ceased to exist on September 30, 1970 and was duly partitioned on March 16, 1971.”
In the three Louisiana Supreme Court cases dealing with Louisiana community property law as applied to pension plans, Eskine v. Eskine, supra, Sims v. Sims, supra, and T.L. James & Co. v. Montgomery, supra, the non-employed spouse’s right to share in a pension arose from the employed spouse’s participation in a company plan during the community.
The issue raised by Ms. Frazier has not been considered previously by this circuit. Our research has revealed two Louisiana cases involving a controversy over a former spouse’s right to share in a plan which was instituted after the community was terminated. In Taylor v. Taylor, 473 So.2d 867 (La.App. 4th Cir.1985), writ denied 477 So.2d 1126 (La.1985), the court held that regardless of the date on which the plan was established the former wife should share, as credit was given for years of *871 service during the community; a pension plan, even if it were established after the termination of the community, was compensation for years of service rendered during the community’s existence. In United Ass’n of Journeymen Etc. v. Myers, 645 F.2d 532 (5th Cir.1981), under the same circumstances the court held that, because the pension plan did not exist until after dissolution of the first community, the spouse did not acquire a right to future benefits during the marriage, even though the employee was given credit for years of service during the community. In our opinion, the reasoning in the federal case and the judgment of the trial court here follow more closely the principles set out in Sims v. Sims and T.L. James & Co. v. Montgomery, discussed above, and we affirm the trial court’s decision.
For the reasons outlined above, the judgment appealed from is affirmed.
AFFIRMED.