JiDOUCET, Judge.
This appeal concerns the effect of a community property settlement on the designation of beneficiary for death benefits under the Louisiana State Employees Retirement Plan.
While John R. Contois, Sr. and Marilyn Morris Contois were married, he became a City Court Judge in Marksville, Louisiana. In that capacity he became a member of the Louisiana State Employees Retirement System (LASERS). On January 1, 1985, he signed a LASERS form designating Marilyn Contois as beneficiary to receive death benefits in case of his death before retirement. The couple was legally separated by judgment dated April 18, 1986. On August 5, 1987, the two executed a voluntary partition of the community of acquets and gains. The agreement states that:
“JOHN ROBERT CONTOIS hereby received, and MARILYN MORRIS CON-TOIS hereby grants, bargains, relinquishes, sells, conveys, releases with complete transfer and subrogation or (sic) all rights and actions of any interest, rights and owership (sic) that he may have in a refinement (sic) plan in the name of JOHN ROBERT CONTOIS, as City Judge of the City of Marksville, Avoyelles Parish, Louisiana.”
|2Similarly Judge Contois relinquished his rights to Mrs. Contois’ State retirement plan. However, when Judge Contois died on June 22, 1991, he had not executed a change of beneficiary form. LASERS paid Mrs. Con-tois death benefits of $19,893.60. As a result, the representative of Judge Contois’ estate filed this action against Mrs. Contois in an attempt to recover the death benefits. The plaintiff based the action on the language of the community property settlement agree- *752 merit under which Mrs. Contois relinquished her rights to Judge Contois’ retirement plan.
The case was submitted to the trial court for a decision without testimony, based on written stipulations and memoranda. The trial court rendered judgment in favor of Mrs. Contois, giving written reasons therefor. Plaintiff appeals.
The representative of the estate of Judge Contois argues that the settlement agreement was tantamount to a revocation of the beneficiary designation. He further argues that Mrs. Contois transferred her rights to receive the death benefit. Mrs. Contois argues that the settlement was insufficient to make a change of beneficiary because it did not substantially comply with LASERS’ requirements for a beneficiary change. Further, Mrs. Contois argues that she had nothing to' convey because she had no right to death benefits at the time the settlement was executed. Additionally, she argues that La. ’ R.S. 11:570 forbids assignment of the retirement benefits of city judges.
La.R.S. 11:570 came into effect on June 25, 1991. It is a redesignation of La.R.S. 13:25.1. Although La.R.S. 13:25.1 was in effect at the time of Judge Contois’ death, the law has not been changed. Both statutes fall under the provisions of the State Employees Retirement System concerning judges and officers of the court. A similar provision exists for other state employees. La.R.S.-11:570 provides that:
“Any annuity, retirement allowance or benefit, or refund of contributions, or any optional benefit or any other benefit paid or payable to any person under the provisions of this Subpart is exempt from state or municipal tax, and is exempt from levy and sale, garnishment, attachment or any other process whatsoever, and is unassignable.”
The purpose of this statute is to protect pension benefits from seizure by creditors. In Eskine v. Eskine, 518 So.2d 505 (La.1988) the Louisiana Supreme Court was faced by an attempt by an ex-wife to seize part of her former husband’s pension. The court found j .-¡that the prohibition against seizure applied only to third parties and was not meant to prevent a co-owner from obtaining her property. The court in Byrd v. Byrd, 528 So.2d 631, 632 (La.App. 2 Cir.1988), dealt with the argument that a similar statute rendered the pension separate property. Citing Walker v. Walker, 463 So.2d 912 (La.App. 2 Cir.1985), the court stated that:
“When considering the Louisiana School Employees’ Retirement System, which included a statute virtually identical to R.S. 33:2381, the court held that:
‘... the statute’s only purpose was to exempt school employees’ retirement benefits from taxation, levy, and sale, garnishment, attachment, and other processes and assignments, and was not to insulate the school employee’s retirement benefits from the application of the matrimonial regimes articles of the civil code.’ ”
Considering these decisions, we find that this statute was not intended and should not be applied to prevent a party’s rights in a spouse’s pension plan from being transferred to the spouse in a community property settlement.
We need not reach the issue of whether the settlement fulfilled LASERS’ formal requirements for a change of beneficiary. Even without a formal change of beneficiary, the named beneficiary may renounce his or her right to receive the benefit. As this court stated in Standard Life Insurance Co. of the South v. Franks, 260 So.2d 365, 369-370 (La.App. 3 Cir.1972), reversed on other grounds, 278 So.2d 112 (La.1973):
“Our Civil Code expressly provides for the sale of a future thing, LSA-C.C. Article 2450, as well as the sale of a hope, LSA-C.C. Article 2451. See Springs Thunder Agency, Inc. v. Odom Insurance Agency, Inc., 237 So.2d 96 (La.App. 1st Cir.1970); and Plaquemines Equipment & Machine Company v. Ford Motor Company, 245 La. 201, 157 So.2d 884 (1963). Under these authorities it is clear that the beneficiary in the present case had the right to assign or renounce the hope or expectancy that on the death of the insured she would receive the proceeds of the policy.
*753 The Code establishes a limitation on the right to contract with reference to future expectancies in the case of successions, LSA-C.C. Article 1887. Planiol, An English Translation By The Louisiana State Law Institute, Vol. II, Part I, No. 1012-1016, explains the source and rationale of the rule which prohibits contracts on future successions: ‘They were considered (in Roman law) as immoral because the parties speculated on the death of a living person who was ordinarily one of their relatives, and in addition, as dangerous because 14they could engender in the minds of parties the thought of crime to hasten its commission. Those motives are extremely feeble.’ Planiol then gives several exceptions which are made to the rule.
We find no Louisiana statute limiting the right of the beneficiary of a life insurance policy to assign or renounce his rights. Perhaps it could be argued by analogy that the rights of such a beneficiary and the rights of an heir or legatee to a succession are so similar that the prohibition stated in LSA-C.C. Article 1887 should apply. Nevertheless, we agree with the observation by Planiol, supra, that the motives for the rule are feeble. Actually, any life insurance policy could be said to engender in the mind of the beneficiary the thought of crime to hasten receipt of the proceeds. We see no reason to extend by analogy the rule prohibiting contracts on future successions to the rights of beneficiaries under life insurance policies.”
We find that the language of the community property settlement agreement can only be interpreted as conveying Mrs. Con-tois’ right to death benefits to Judge Contois. In the case of Herrington v. Skinner, (La.App. 8 Cir.1994); 640 So.2d 748, a wife was attempting to prevent her former husband from changing the designation of beneficiary to delete her. By means of a community property settlement she had conveyed to her former husband “all right, title and interest in and to” his State retirement plan. This court rejected Mrs. Herrington’s argument that survivorship rights in a pension are not a right to or interest in the pension plan. This court found that the right to survivors’ benefits was, in fact, a right in the plan.
Therefore we found that by conveying all rights she had conveyed her right to receive survivor’s benefits. Similarly, we find that under the language of the settlement agreement made the basis of this suit, Mrs. Con-tois conveyed all rights she had in the pension plan to Judge Contois. The right to receive a death benefit is a right in the plan, even if it was a future right at the time the settlement was executed. As we have said future rights may be conveyed. By agreeing to convey all her rights in Judge Contois’ pension plan Mrs. Contois conveyed or renounced her right to receive the death benefit.
Accordingly, the judgment of the trial court is reversed. Costs of this appeal are assessed to Marilyn Morris Contois.
REVERSED.